IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,               )
                                        )  Case No. CR-09-235-BR
                Plaintiff,              )
                                        )
v.                                      )  August 6, 2010
                                        )
DENNIS BEETHAM and D.B. WESTERN,        )
INC.,                                   )
                                        )
                Defendants.             )
_____)  Portland, Oregon


TRANSCRIPT OF PROCEEDINGS
(Status Conference)


BEFORE THE HONORABLE ANNA J. BROWN, DISTRICT JUDGE


COURT REPORTER:          AMANDA M. LeGORE, RDR, FCRR, CRR, CE
                         U.S. Courthouse
                         1000 SW Third Avenue, Rm. 301
                         Portland, OR  97204
                         (503)326-8184

APPEARANCES:

FOR THE PLAINTIFF:     MICHELLE KERIN
                       J. RON SUTCLIFFE
                       Assistant U.S. Attorneys
                       U.S. Attorney's Office
                       1000 SW Third Avenue
                       Portland, OR  97204
                       (503)727-1000

                       DAINA ARIJA VITOLINS
                       Crook County District Attorney
                       Crook County Courthouse
                       300 NE Third
                       Prineville, OR 97754
                       (541)447-4158


FOR THE DEFENDANTS:    JANET HOFFMAN
                       SARAH ADAMS
                       Hoffman Angeli, LLP
                       1000 SW Broadway, Suite 1500
                       Portland, OR  97205
                       (503)222-1125

(August 6, 2010)

P R O C E E D I N G S

MS. KERIN:  Good morning, your Honor.

This is the time and place for United States versus Dennis Beetham and D.B. Western, Inc., Case No. 09-235.

Sarah Adams and Janet Hoffman are present for the defendant.

Michelle Kerin, Ron Sutcliffe, and Daina Vitolins for the Government.

This is the time for a status report on -- and status conference on the Daubert hearings.

THE COURT:  And the case, as a whole, is -- is probably a fair addition to that title.

When I received, Counsel, your message last week indicating that it would not be a good use of everyone's time to proceed on the course we had been proceeding on -- at least today -- I effectively stopped working on the writing of an opinion, which I was well into, on the issue that was the focus of the Government's e-mail message.  Specifically a tentative statement on my part that paraformaldehyde would not be included as -- within a fair reading of that which was listed as formaldehyde on the U122 listing; although I have not completed that analysis, and I certainly will always reserve

legal conclusions until that point in time when I'm sure I have to draw the conclusion and I've done the best I can with what resources I have available. So I stopped midstream.

I think it is accurate for the Government to assume that I have a strong leaning that way. And I -- the more I've looked into it, the less I've been dissuaded.

The first question I wanted to ask about was whether the parties anticipated wanting to brief that issue specifically; whether paraformaldehyde should be considered by the jury as something that was within the scope of the U122 formaldehyde listing, or whether the parties think you've adequately given me your views on that in a variety of ways, primarily through our give and take in these past hearings.

Because if the parties wanted to do some further paper briefing on the issue, or further analysis -- hopefully to guide me to the correct legal outcome -- then I shouldn't finish doing what I'm doing until we have that process.

We've gotten into sort of a -- a rather strange leapfrogging procedural mode here. I think all centered around the ultimate and necessary goal of determining, as a matter of law, what the standard is the Court would use to guide the jury and assessing whether, as a matter of fact, the Government has sufficient evidence to proceed on one or more theories.

But in the process of doing that and in the starting and stopping, I think in some respects I've gotten ahead of

myself and then behind you. So I'm wanting to be sure we realign, and we get on course to a place where we're -- we're making affirmative progress and not unnecessarily duplicating things.

So I say this because it seemed to me, in light of the e-mail and the status report, that the Government was taking a hard look at what its intentions were, the factual and legal theories on which it wanted to proceed. And, of course, that's always the driving force in a criminal prosecution.

There isn't any reason for the Court to be working on a particular tangent or theory that's unclear in law if it's not going to actually be important in the resolution of this case.

So -- so I will tell you this. I have worked on that issue. I remain definitely of the impression that paraformaldehyde is not a U122 form of formaldehyde. But that's just based on what I've been given and my own analysis so far.

I've worked on elements of the offense, and if I were to be required today to instruct the jury under either Count 1 or Count 3 -- the elements themselves are pretty straightforward. The real question is the definitional terms that go along with those elements. But the outline I was working with -- and ultimately I'll share this with you when I'm satisfied it's in a form that I should.

But as to Count 1, the disposal count, I structured this as three elements.

First, the particular defendant knowingly disposed of a substance.

Second, at the time the defendant disposed of it, the substance was the hazardous waste formaldehyde, as listed under the federal regulation, designated as U122.

And, third, the particular defendant did not have the required permit to dispose of such hazardous waste.

I think that's an accurate statement of the crime. Then the question becomes what does it mean to dispose, which isn't a very controversial issue. I don't think.

Then what is formaldehyde, as listed under the federal regulation U122.

At the moment I'm -- I'm focused primarily on the -- the three criterion. First, the commercial chemical product, formaldehyde.

Second, an off-specification grade of formaldehyde.

And, third, residue in a container that previously held the commercial chemical product formaldehyde or perhaps also the off-specification grade.

I'm not sure whether residue would encapsulate the two previous, but that's a matter for another day.

So you can see that I'm thinking along lines that don't include paraformaldehyde as a way for the jury to -- as

appropriate for the jury to consider in determining whether whatever evidence they hear is sufficient to satisfy them beyond a reasonable doubt that those three elements have been met.

So that's where I am. And what I need to do is to coordinate where you are and then determine, today, a plan that doesn't -- that gets us back in alignment in terms of an ordinarily consideration of things.

So I think it's probably best to start with the Government giving me a sense, as precisely as you can, Counsel, as to what, as of now, you expect as to Counts 1 and 3 and this problem we've been working on from a variety of angles but never quite directly.

Ms. Kerin.

MS. KERIN: Yes. Thank you, your Honor.

Part of the Government's delay in addressing this issue -- because as we indicated in our status report, this is obviously a very significant decision in the case. And we -- we heard what you said in the last hearing, and you are saying it again loud and clear.

But the -- the key players for the Government to consider some of the decisions about -- you know, even what if there's further briefing to be done -- have not been available. And so, for example, the U.S. attorney is currently out of the district. There are people to consult with back east. And so

I guess one of the things that we would ask with respect to briefing is that we be able to provide you an answer on Tuesday or Wednesday whether additional briefing is necessary.

THE COURT: All right. So today you don't know whether you want to supplement the record or at least reduce to one cogent brief the Government -- in writing, so that there isn't any confusion about what the Government's interpretation is and the reasons why it might want to contend that paraformaldehyde is within U122 -- you want some time to make a decision as to whether you want to brief the matter in some further way, or stand on the record as it exists; as to which I should probably then make a ruling?

MS. KERIN: That's correct.

THE COURT: If -- if you're going to want to preserve that as an issue.

Because, again, everything starts with what the Government wants to drive here. And if the Government wants to drive a prosecution on the premise that paraformaldehyde is a U122 listed sub -- substance, then -- and if I disagree as a matter of law, then we need to tee that up and frame it up, so that the issue can be reviewed at an appropriate time by a higher authority.

If the Government's options are different than wanting to drive a prosecution on that premise alone, or whether it chooses not to proceed there but on another theory, there is

Count 2, which I don't think is affected by this problem, but I don't know. Then that's another issue.

So you want to decide.

Okay. If you decide to brief, then you want to have some time to do that.

MS. KERIN: Yes.

THE COURT: And then no doubt the defendant will want some time to file another paper statement to respond.

Okay. Fine.

I don't think we should be trying to plan more Daubert proceedings until we know what standard we're dealing with.

MS. KERIN: (Nods head.)

THE COURT: It just doesn't make sense to be -- you know, trying to develop a variety of theories that may or may not be relevant.

This is -- this is expensive and time consuming enough when we focus only on what really matters. So --

You told me in the status report that the Government had done some additional testing. And that you would share the results of one preliminary test, and you were waiting on others.

Would you like to share what you do know with me, or would you rather not?

MS. KERIN: I'll have Mr. Sutcliffe --

MR. SUTCLIFFE: I would be happy to do that, your

Honor.

THE COURT: All right.

MR. SUTCLIFFE: The -- following Mr. Jordi's testimony last time, it was suggested that a -- running it through a nuclear magnetic resonance machine would give you a better idea of the chain lengths.

So the samples were sent to NAIC in Denver, and they started running them. And the first one was from the reactor vessels, which would be Count 3. And the chain length -- at least for one sample -- came back over 100 chains, which would mean that it's not -- it's beyond the paraformaldehyde. At least if we're going to follow the Walker chart, which I think that's what -- the path the Government's gone down.

Since then -- and I -- and I informed Ms. Hoffman and Ms. Adams about that. But since then, this week, they completed the testing on the other samples from the pit in the NMR, and those did come back at a chain length consistent with paraformaldehyde. And so I -- we just need them to write up the final report and have it reviewed, and then we'll give that --

THE COURT: So let's just assume hypothetically for the moment that you end up faced with a ruling that paraformaldehyde is not a -- not a substance that qualifies under the U122 formaldehyde listing. And you have evidence that what you have now is paraformaldehyde. Have you thought

about what the Government's approach will be as to Counts 1 and 3? Is there -- we talked in hypothetical terms at the last setting about trying to determine the status of the product when it was disposed of and when it was stored, because we know these materials change form over time, and necessarily the Government came in at a point after the materials were disposed of or initially stored. And may thus -- these materials may have had a character that is qualifying under U122 at the time they were disposed of or stored.

What -- what do we -- do we know what's going to happen? Or would you rather not speculate at the moment?

MR. SUTCLIFFE: No, I don't want to speculate. But it's not like -- I mean, when the Court made that preliminary ruling the other day, we took it very seriously. And there's been some more investigation. I mean, part of the grand jury was more focused on assuming that paraformaldehyde was within the listing.

So we've had to go back and try and figure out what happened in Minnesota.

THE COURT: Right.

MR. SUTCLIFFE: And how that got here.

So that's been an ongoing process. And then there's been some other ongoing discussions with some headquarters EPA people about --

THE COURT: All right. When will the Government be in

a position to tell the defendants and me how it believes it has a basis to proceed and how it wishes to proceed?

MR. SUTCLIFFE: I would hope by next Friday.

THE COURT: You think?

MR. SUTCLIFFE: I was hoping earlier than that, but that's --

THE COURT: Look. We we've been at this for a while, and there isn't any point in pressing for the sake of a quick decision, if the people who need to make the decision aren't available. You know, I want to be realistic here and be sure that the course we take is rational and well thought out. And then the plan we make to resolve the case can finally go forward.

MR. SUTCLIFFE: Certainly by two weeks from now.

THE COURT: My -- my very helpful law clerk is reminding me that there is a distinction between the off-specification formaldehyde, which might include paraformaldehyde, and then the problem between the commercial chemical product formaldehyde.

Again, my view of what qualifies as a U122 listing falls within the three criterion I've indicated. And so if I'm wrong, then I need to be shown how that's wrong, so that we can get on with things or not.

All this says to me is that it may be premature to put up a specific schedule, here, as to this so-called Daubert

problem.

And it may be premature for the defendant to file any motion to dismiss if the Government's going to change in any material way its prosecution theory.

I mean, I suppose it's even conceivable the Government could go back to the grand jury and get a Superseding Indictment on a more -- on a different theory. I don't know.

But we need to figure out what we're doing before we continue to pour time and effort and resources into this. And I know everyone is doing the best they can.

You're saying next week, Mr. Sutcliffe. It happens that the week after next week is our Ninth Circuit judicial conference week.

So I'm not going to be here in that week. Perhaps it would make sense for us to have another conference in the week following the week of August 23, with you obviously conferring with defense counsel before then and hopefully coming up with more clarification about what the Government intends to do. And then a specific plan to follow.

Because if the Government wants to litigate in a more focussed way whether this paraformaldehyde dichotomy is -- should be developed more and I should hear more about the legal analysis and -- and withhold forming any final conclusions on it, then we need to get to that because that's clearly threshold.

If the Government's going to go a different direction, then we need a plan and a schedule for that. And then you all are perfectly capable, also, of working out some other kind of resolution.

Don't look so sad, Mr. Sutcliffe. You're just tired, maybe.

MR. SUTCLIFFE: I apologize, your Honor.

THE COURT: No, you just looked crestfallen. Just -- sorry. It is what it is.

So, Ms. Hoffman, I assume you don't object to having nothing scheduled today, being relieved of the deadline to file the motion to dismiss, and waiting until we have one more conference, so that the Government can make the choices it wants to be able to make, so that we're all hopefully relieved of moving down multiple paths that could be inefficient and simply unwise.

MS. HOFFMAN: Your Honor, we certainly don't object.

As far as our constitutional motions, separate and apart from the motion to dismiss, our office is well on the way of having those completed.

THE COURT: I wanted you to -- I wanted to ask you -- excuse me for interrupting --

MS. HOFFMAN: Yes.

THE COURT: -- to just give me an idea what motions you're planning.

MS. HOFFMAN: Those are -- I'm delighted.

The first one, your Honor, is the request for a taint hearing, based on the fact that attorney-client privileged materials were obtained by the Government and used within -- at least the discovery they provided to us, we can't tease out, without a hearing, the analytical impact of our confidential information. And it's been obtained through multiple sources at multiple decision points of the Government, which we've outlined in our pleadings that are almost done.

The next one, your Honor, is a Motion to Suppress Mr. Beetham's statements that he made to the DEQ as taken in violation of his Fifth Amendment rights.

The next motion that we have, your Honor, is a Motion to Suppress the search of his factory that occurred in North Bend, Oregon, based on what we believe to be false attestations in the affidavits that were submitted first to a state court judge in support of an administrative search, and then secondarily adopted and reused in the search which was authorized by a federal judge, that occurred in the North Bend facility.

THE COURT: All right.

MS. HOFFMAN: And then finally, of course, your Honor, we have the motion to dismiss. But that -- we've agreed, having heard you -- that we'll table it at this point.

THE COURT: And the premise of the motion to dismiss

is?

MS. HOFFMAN: We don't believe a crime's been articulated in the Indictment, your Honor.

THE COURT: Well, if it's simply as to the words of the Indictment, I don't think you should waste your time on that.

MS. HOFFMAN: It's not the words. It's what they claim to be a crime, and how they have articulated it. First, with their general definition of the polymerized liquid formaldehyde.

THE COURT: So this goes back to the nature of the substances?

MS. HOFFMAN: Yes, your Honor. It's what you went through at the beginning of your colloquy.

THE COURT: All right. Well, has the Government been aware of these various arguments, as Ms. Hoffman has summarized them? What she calls her constitutional bases?

MS. KERIN: Yes, your Honor.

THE COURT: Okay. So I assume you'll take all of those into account as you decide which way we're going to go here?

MS. KERIN: Absolutely, your Honor.

THE COURT: Very good.

Well, then let's do this. I would prefer that the defendants not file any motions until we have one more

conference and we have a deliberate plan, because the filing of the motion simply then triggers the need to respond, and all of that. And it's clear the Government's taking a hard look at what's going on here.

I don't know where that will lead, but we shouldn't assume the Indictment against which the motion to dismiss would be addressed is going to be the operative Indictment. I think everything may be on the table. They may seek to supersede. There may be other issues. I don't know.

So let's not file any more motions until a new schedule is set.

I would be able to see you in the week of August 23. You tell me what day would work best for you.

MS. HOFFMAN: Excuse me, your Honor.

THE COURT: Yes.

MS. HOFFMAN: I'm going to be out of the country starting on the 24th, but I can be reached by telephone.

THE COURT: Could we do this on the 23rd, then?

MS. HOFFMAN: The 23rd would be perfect, your Honor.

THE COURT: All right.

MS. HOFFMAN: As long as -- I'm going to be on the East Coast. As long as I can join by phone?

THE COURT: Yes, I'm sure we can make that work.

MS. HOFFMAN: Thank you.

THE COURT: As long as it's not a cell phone. You

need to be on a land line, in order that the speaker connection works better.

MS. HOFFMAN: I'll make sure that happens.

THE COURT: Okay. Could we do this at three o'clock on Monday, August 23?

MS. KERIN: That works for the Government, your Honor.

THE COURT: And for Ms. Vitolins too? Yes?

MS. VITOLINS: Yes, your Honor. Thank you.

THE COURT: Okay. So we'll have a further status conference on Monday, August 23, at 3:00 p.m.

Then to prepare me for that, if you could have a joint status report filed by August 19, at the end of the business day -- that's the preceding Thursday -- that lays out -- gives me clarification of what the Government's intentions are.

Does the Government intend to supersede? Does the Government intend to dismiss? Does the Government intend to proceed as charged?

And depending on which course the Government chooses, what is the management plan the parties recommend me adopting to address these issues and in what order. Okay?

All right. Thank you.

MS. HOFFMAN: Thank you, your Honor.

MS. KERIN: Thank you, your Honor.

THE COURT: Appreciate the help so far. We're in recess.

(Conclusion of proceedings.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the oral proceedings had in the above-entitled matter this 16th day of September, 2010.  A transcript without an original signature or conformed signature is not certified. I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

/S/ Amanda M. LeGore

_____

AMANDA M. LeGORE, RDR, CRR, FCRR, CE